IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS GERARD GONZÁLEZ CANTÓN,

Plaintiff,

v.

MAD RUK ENTERTAINMENT, INC.,

Defendant.

CIVIL NO. 22-1458 (CVR)

## OPINION AND ORDER

## INTRODUCTION

This case arises out of a tortious interference claim brought by Plaintiff Luis Gerard González Cantón ("Plaintiff") against Mad Ruk Entertainment, Inc. ("Defendant") (Docket No. 1) resulting from issues as to the copyright ownership of a short film entitled "The Wake." Default was entered against Defendant on December 22, 2022. (Docket No. 9). Before the Court now is Defendant's Motion to Set Aside Default and to Dismiss ("Motion to Set Aside and Dismiss") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") or, in the alternative, pursuant to the *forum non conveniens* doctrine. (Docket No. 16).

For the reasons stated below, Defendant's Motion to Set Aside and Dismiss is GRANTED. Accordingly, Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Puerto Rican citizen, "is a well-known and established director of television commercials, who works all over the world." (Docket No. 1 at pp. 2-3). Among

his many works is a short film entitled "The Wake", registered in the United States Copyright Office on April 7, 2022, with registration number PAu 4-140-761.  (Docket No. 1, Exhibit 1 at p. 1).  Defendant is an Ontario corporation organized under the laws of Canada, with its principal place of business in Toronto, Ontario, Canada.  (Docket No. 1 at p. 3).  Defendant was hired by Plaintiff to provide the production services and budget necessary to film "The Wake."  Id. at p. 4.  According to Plaintiff, "it was always intended that [Defendant] would act as a service producer of The Wake and that the copyright in The Wake would belong to [Plaintiff]."  Id. at p. 5.  Defendant allegedly never acquired any right to produce The Wake based on Plaintiff's screenplay nor acquired any copyright in any of the elements of said short film.  Id.  According to Plaintiff, "any releases or waivers of rights in favor of [Defendant] were obtained solely to be assigned to [Plaintiff] to ensure that [Plaintiff] had a proper chain of title in all elements of The Wake."  Id.

Following a dispute over lack of payment for services rendered by Defendant during the production of The Wake, Defendant filed a breach of contract suit against Plaintiff in the Canadian court system on October 20, 2020, requesting *inter alia* monetary compensation and asserting intellectual property rights over The Wake, which is currently being litigated.  (Docket No. 1 at p. 6, Docket No. 16 at p. 3, and Docket No. 20-1 at pp. 15-22).  On April 6, 2022, Plaintiff received notice from Vimeo.com, a video hosting and sharing platform, stating that "the copy of The Wake he posted on the Vimeo website was removed in response to a takedown notice submitted pursuant to the Digital Millenium Copyright Act" by Defendant, claiming copyright infringement.  (Docket No. 1 at p. 6).  The following day, on April 7, 2022, the director of the Cleveland International Film Festival called Plaintiff to notify him that they would no longer be showing The Wake

in the festival due to a cease-and-desist letter sent by Defendant, who had claimed copyright infringement.  Id. at p. 7.  Plaintiff received a similar call from the director of the Blackbird Film Festival on April 12, 2022.  Id.  He also received a letter from Easy Mondays, a bespoke production company that had offered to develop The Wake into a full-length feature film, informing him that they were not going to move forward with the project due to the copyright dispute.  (Docket No. 1 at p. 11).

In response to the actions taken by Defendant, Plaintiff filed the complaint before this Court on September 21, 2022, seeking declaratory judgment over copyright ownership of The Wake and damages for defamation and tortious interference.  (Docket No. 1).  On November 30, 2022, Plaintiff filed a Motion for Default Entry against Defendant, which was granted on December 22, 2022.  (Docket Nos. 7 and 8).

On March 24, 2023, Defendant appeared for the first time and, without availing itself of the Court's jurisdiction, presented a Motion to Set Aside and Dismiss, pursuant to Rule 12(b)(2).  (Docket No. 16).  Defendant moves the court to set aside the entry of default proffering that Plaintiff's failure to properly serve summons prevented it from learning about the case filed against it until after default was entered and prompted it to now appear before the Court.  Id. at p. 2.  Defendant also contends that the case should be dismissed for lack of personal jurisdiction or, in the alternative, pursuant to the doctrine of forum non conveniens.  Id. at p. 1.  On April 24, 2023, Plaintiff opposed the Motion to Set Aside and Dismiss.  (Docket No. 20).  On May 9, 2023, Defendant filed its reply to Plaintiff's opposition, (Docket No. 23), and on May 30, 2023, Plaintiff filed its Sur-reply.  (Docket No. 26).

# ANALYSIS

## I.    Entry of Default against Defendant.

Federal Rule of Civil Procedure 55(a)[1] and (c)[2] provide the legal grounds for entering or setting aside a default against a party.  The decision of whether or not to "set aside an entry of default lies within the sound discretion of the district court."  Coon v. Grenier, 867 F.2d 73, 75 (1st Cir. 1989) (citing United States v. One Urban Lot, Etc., 865 F.2d 427, 429 (1st Cir. 1989)).  The guiding standard when making this determination is "good cause".  Fed. R. Civ. P. 55(c).  This standard is not rigid in its application, but mutable, and may vary from situation to situation.  McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 503 (1st Cir. 1996) (citing Coon, 867 F.2d at 76).

Despite the fact that "[t]here is no mechanical formula for determining whether good cause exists[,] the courts may consider a host of relevant factors."  Indigo America, Inc. v. Big Impressions, LLC, 597 F.3d 1, 3 (1st Cir. 2010) (citing KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003)).  The three main factors to consider are: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented."  Id.  Other factors that may also be considered include, but are not limited to, the following: "(4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion to set aside the entry of default."  Id.  See also McKinnon, 83 F.3d at 503; Rodríguez Fernández v. Urban Transit Solutions, Inc., 230

---

[1] Federal Rule of Civil Procedure 55(a) states that "[w]hen a party whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P 55(a).

[2] Federal Rule of Civil Procedure 55(c) provides, in pertinent part, that "[t]he court may set aside an entry of default for good cause. . . ."  Fed. R. Civ. P. 55(c).

F.R.D. 273, 275 (D.P.R. 2005); Brand Scaffold Builders, Inc. v. Puerto Rico Elec. Power Auth., 364 F.Supp.2d 50, 54 (D.P.R. 2005).  "Ultimately, the burden of demonstrating good cause lies with the party seeking to set aside the default", in this case, Defendant. Indigo America, Inc., 597 F.3d at 3 (citing KPS & Assocs., 318 F.3d at 12).

Upon a review of the record, the Courts finds in favor of setting aside the entry of default.  First, there is nothing in the record to suggest that Defendant's default was willful.  Defendant avers that it did not learn about the case against it until after default was entered, and shortly before filing its Motion to Set Aside and Dismiss.  (Docket No. 16 at p. 4).  Defendant also proffers, and Plaintiff admits, that Plaintiff attempted to serve summons and copy of the Complaint to an old address in Toronto that appeared in the records of Ontario's Ministry of Government and Consumer Services,[3] where Defendant's offices were no longer located, and that upon learning this, Plaintiff then sent the summons and Complaint to that very address via general mail.[4]  (Docket No. 16 at p. 4). As a result, it was not until recently that Defendant claims he learned of the case and the default status against it.  Id. at p. 12.

Although Plaintiff claims that service was proper,[5] he does not deny that the address where he sent the summons and Complaint was no longer in use.  Nor is there any mention on the record of any action taken by Defendant to indicate it had knowledge of the case against it or that it acted in bad faith.  For this reason, the Court believes Defendant's default was not willful.

---

[3] (Docket No. 20-1 at p. 66).
[4] This fact is admitted by both parties in their filings.  (Docket No. 16 at p. 4 and Docket No. 20 at pp. 4-5).
[5] The issue regarding whether service of process was proper will not be addressed, for the reasons set forth below.

Second, the Court fails to see how Plaintiff would be prejudiced by setting aside the default entry, as the case is still in its initial stages.  Plaintiff has only gotten so far as to present his Complaint (Docket No. 1) and the Motion for Entry of Default. (Docket No. 7).  Moreover, at no time does Plaintiff claim that setting aside the default entry would adversely affect him; rather, his only argument against setting aside the default entry is that Defendant chose to ignore the case against it,[6] despite being properly served.  Plaintiff makes no mention of how setting aside the default would adversely affect him in any way.  Thus, at this early juncture, setting aside the entry of default would have no significant effect on Plaintiff's claims.

Third, Defendant has a meritorious defense that surely justifies setting aside the default entry, to wit, that the Court lacks personal jurisdiction over it.  (Docket No. 16 at p. 13).  To be clear, the Court of Appeals for the First Circuit ("First Circuit") has explained a defendant need not prove its likelihood to succeed in the merits, but rather only "plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Coon, 867 F.2d at 77 (citing Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C.Cir. 1980)).  A defense claiming that the Court lacks personal jurisdiction over the Defendant, if proven, is undoubtedly the type of defense that warrants setting aside default entry and attending the case on the merits.  See 4 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1063 (4th ed. 2023) ("A federal court may not proceed to a valid judgment in the absence of [personal] jurisdiction...").

---

[6] As previously stated, the record does not show Defendant willfully ignored the case against it.

Finally, the Court finds that the remaining four factors also favor Defendant. As previously discussed, the record does not suggest bad faith on the part of the Defendant. Defendant's lack of knowledge as to the case against it is reasonable, given that Plaintiff himself admits service was sent to an obsolete address. Similarly, the timing of Defendant's motion is proper since this case is only just beginning. These facts coupled with the amount of money Plaintiff is seeking —well over three million dollars— militates in favor of setting aside the entry of default and attending the case on the merits.

For these reasons, the Court GRANTS Defendant's request to set aside the entry of default.

## II.   Motion to Dismiss under Rule 12(b)(2).

Rule 12(b)(2) allows for dismissal of a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant challenges the Court's ability to exercise jurisdiction over it, "[t]he plaintiff bears the burden of proving" that jurisdiction is present. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (citing Foster-Miller, Inc. v. Babcock & Wolcox Can., 46 F.3d 138, 145 (1st Cir. 1995); Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992)). Typically, district courts "'may choose from among several methods for determining whether the plaintiff has met its burden' of proving that court's personal jurisdiction over the defendant." Northern Laminate Sales, Inc v. Davis, 403 F.3d 14, 22 (1st Cir. 2005) (citing Daynard, 290 F.3d at 50-51).

When the Court does not hold an evidentiary hearing, "as in this case, the 'prima facie' standard governs its determination." U.S. v. Swiss American Bank, Ltd. ("Swiss II"), 274 F.3d 610, 618 (1st Cir. 2001) (citing United Elec. Radio & Mach. Workers of Am. V.

163 Pleasant St. Corp. ("Pleasant St. II"), 987 F.2d 39, 43 (1st Cir. 1993)). See also Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Att'ys at Law, 787 F.2d 7, 8 (1st Cir. 1986) ("Where there has been no evidentiary hearing and the court proceeds upon written submissions, plaintiff 'need only make a prima facie showing that jurisdiction exists. . . .'" (citation omitted)). Likewise, when a Rule 12(b)(2) motion to dismiss is presented "at the inception of the case and the issue of jurisdiction is not intertwined with the merits", as in this case, "the prima facie approach [also] controls." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022) (citing Foster-Miller, Inc., 46 F.3d at 145-46; Boit, 967 F2d at 676).

Under the prima facie standard, the Court functions "'not as a factfinder, but as a data collector'", and must determine if the facts a plaintiff proffers, viewed in the most favorable light, "would support all findings 'essential to personal jurisdiction.'" Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 51 (1st Cir. 2020) (citing Foster-Miller, Inc., 46 F.3d at 145-46). "A showing of personal jurisdiction, however, must be based on specific facts set forth in the record in order to defeat a motion to dismiss." Kowalski, 787 F.2d at 9 (citing Chlebda v. H.E. Fortna and Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979); Weller v. Cromwell Oil Co., 504 F.2d 927, 929-30 (6th Cir. 1974)). In other words, the plaintiff must not merely rely on the pleadings, but must instead have "affirmative proof" that jurisdiction indeed attaches to Defendant. Pleasant St. II, 987 F.2d at 44 (citing Boit, 967 F.2d at 675). The defendant's proffered facts are considered only insomuch as they are uncontradicted. Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009) (citing Foster-Miller, Inc., 46 F.3d at 145).

The parties dedicate a good portion of their filings arguing over the accuracy of Plaintiff's service of process in this case.  However, the Court does not reach this issue as, even if Defendant was properly served, personal jurisdiction is not present in this case for the reasons discussed below.

### A.  Personal Jurisdiction

Well-settled First Circuit precedent states that "[w]hen assessing whether personal jurisdiction exists with respect to a non-resident defendant, a federal court exercising diversity jurisdiction acts as the 'functional equivalent of a state court sitting in the forum state.'"  Kuan Chen, 956 F.3d at 54 (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (2016); see also Daynard, 290 F.3d at 51; Northern Laminate Sales, Inc., 403 F.3d at 24; Astro-Med, Inc., 591 F.3d at 8.  The state's long-arm statute, in this case, the Puerto Rico long-arm statute, will therefore govern the Court's jurisdiction over a non-resident defendant.  See American Exp. Intern., Inc. v. Méndez-Capellán, 889 F.2d 1175, 1178 (1st Cir. 1989) (citing Mangual v. General Battery Corp., 710 F.2d 15, 18 (1st Cir. 1983)).  Seeing as "the reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause", Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011), the Court may proceed to determine whether exercising personal jurisdiction over Defendant "falls within constitutional bounds."  S&S Imports, Inc. v. Cooper Tire & Rubber Company, Civil No. 20-1064 (JAG), 2021 WL 5570327, at *3 (D.P.R. July 12, 2021).

It is black-letter law that "'district court[s] may exercise authority over a defendant by virtue of either general or specific personal jurisdiction."  Daynard, 290 F.3d at 51 (quoting Mass Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.

1998)).  General jurisdiction requires only that "'the defendant [] have continuous and systematic contacts with the state'", even when the cause of action is unrelated to defendant's contacts.  Astro-Med, Inc., 591 F.3d at 9 (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)).  Specific jurisdiction, on the other hand, requires that Plaintiff's claim "'be related to the defendant's contacts.'"  Id.  The Court will briefly discuss the former before analyzing the latter, which is where the brunt of Plaintiff's opposition lies.

 1.  General Jurisdiction.

General jurisdiction requires that the defendant's contacts within the forum be continuous and systematic to such a degree so as to "'render it essentially at home in the forum State.'"  Kuan Chen, 956 F.3d at 57 (citing Daimler AG v. Bauman, 571 U.S. 117, 134 S.Ct. 746, 761 (2014)).  It is a much more stringent standard than that required for specific jurisdiction.  See Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (citing Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)).  Its main focus depends first and foremost "on the quality and quantity" of the defendant's in-forum contacts."  Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)); Swiss II, 274 F.3d at 619.  Thus, "'if the same do not exist in sufficient abundance. . . the inquiry ends.'"  Swiss II, 274 F.3d at 619 (citing Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990)).

The Court does need to go further than this first consideration.  The only contacts that can be gleaned from the record are: (1) a cease-and-desist letter to the director of the Cleveland International Film Festival, claiming that Defendant owned the copyright to

The Wake and requesting that the film not be shown at the festival; (2) a cease-and-desist letter to the director of the Blackbird Festival in New York, also requesting that The Wake not be presented at the festival for the same copyright reasons; (3) an unspecified communication between Defendant and Easy Mondays, allegedly claiming ownership over The Wake; and (4) a takedown notice sent to Vimeo.com.  (Docket No. 1 at pp.  6-8, 11).  These contacts are not nearly enough to render Defendant at home in Puerto Rico by any means, considering none of those tortious acts occurred in this forum.  Furthermore, the record does not show that Defendant had any sort of relationship or connection to the island.  As such, the Court concludes that it lacks general jurisdiction over Defendant. The Court now moves on to the specific jurisdiction analysis.

> 2.  Specific Jurisdiction.

For specific jurisdiction to attach to an out-of-forum defendant, the defendant must have "'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  PREP Tours, Inc. v. American Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (citing Int'l Shoe Co., 326 U.S. at 316).  When analyzing the sufficiency of these contacts, the First Circuit follows a three-part analysis:

> First the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's law and making the defendant's involuntary presence before the state's court foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996) (citing Pritzker v. Yari, 42 F.3d 53, 60-61 (1st Cir. 1994)).  These three factors are referred to as relatedness,

purposeful availment, and reasonableness, respectively.  Northern Laminate Sales, Inc., 403 F.3d at 25 (citing Daynard, 290 F.3d at 60)).  Plaintiff has the burden of proving each prong of specific jurisdiction, for any "failure as to any one of them defenestrates its claim of specific jurisdiction."  Motus, LLC, 23 F.4th at 122 (citing Kuan Chen, 956 F.3d at 59).

   i. Relatedness.

  The relatedness test, that the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities, is a relatively flexible and relaxed standard.  Astro-Med, Inc., 591 F.3d at 9 (citing Pritzker, 42 F.3d at 61).   However, it is not "'an open door.'"  Vargas-Santos v. Sam's West, Inc., Civil No. 20-1641 (GAG), 2021 WL 4768387, at *4 (D.P.R. Oct. 12, 2021) (citing Harlow, 432 F.3d at 61).  A plaintiff must show that there exists a "material connection" between the claim and the defendant's forum-state contacts.  Id.  Furthermore, when analyzing specific jurisdiction in a tort claims, the Court must keep the causation element at the "forefront of the due process investigation."  Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994); see also Mass Sch. of Law at Andover, Inc., 142 F.3d at 35 ("[I]f a tort claim [sic], we customarily look to whether the plaintiff has established 'cause-in-fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state-conduct gave birth to the cause of action).'" (citing United Elec. Radio & Mach. Workers of Am. V. 163 Pleasant St. Corp. ("Pleasant St. I"), 960 F.2d 1080, 1089 (1st Cir. 1992)).

  As previously discussed, Plaintiff's proposed contacts consist of four instances of alleged tortious interference, to wit: two letters sent to film festivals in New Yok and Ohio, a communication sent to an American production company, and a takedown notice sent

to a website unrelated to Defendant.  (Docket No. 1 at pp. 6-8, 11).  The norm in the First Circuit has consistently been to reject personal jurisdiction whenever "'the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect.'"  Harlow, 432 F.3d at 61 (quoting Pleasant St. I, 960 F.2d at 1089).  The Court follows this norm today.

None of the aforementioned contacts occurred in Puerto Rico, but rather in other jurisdictions of the United States (e.g., New York and Ohio).  See Swiss II, 274 F.3d at 621 ("[T]here can be no requisite nexus between the contacts and the cause of action if no contacts exist.").  Moreover, the record demonstrates that Defendant is a Canadian corporation, and there is no evidence as to Defendant having any other contact in the United States, much less in Puerto Rico.  Thus, one or two calls made to a non-forum state, without any other indication of in-forum contact or activity, falls short of satisfying the relatedness element.  See A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 60 (1st Cir. 2016) (holding that an "indirect effect of [an] out-of-state injury caused by [an] out-of-state conduct is insufficient to fulfill the relatedness prong.").  By that token alone, Plaintiff's claim already fails to meet the first prong of specific jurisdiction.

  ii. Purposeful Availment.

In an effort to salvage his claim from the absolute absence of contacts within this forum, Plaintiff posits another theory, which has historically fallen within the purposeful availment prong of the specific jurisdiction analysis.

Plaintiff proffers that the Court may acquire personal jurisdiction over Defendant pursuant to the "effects" test set out in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984).  To this end, Plaintiff theorizes that the tortious acts committed by Defendant

were felt most in Puerto Rico because "not only is it Plaintiff's principal place of residence, it is also the principal place of business . . . and where Plaintiff's image and reputation would suffer most harm. . . ." (Docket No. 20 at pp. 10-11).  He also avers that, since Defendant sent a takedown notice to Vimeo.com, an interactive website, the effects of Defendant's actions have a worldwide reach, which allows this Court to assert jurisdiction over Defendant under the effects test.  Id. at p. 9.  This theory does not pass muster.

The Court must first point out the long-standing notion that "[t]he function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478 (1984)); see also Nowak, 94 F.3d 716; A Corp., 812 F.3d at 60; Rodríguez-Rivera v. Allscripts Healthcare Solutions, Inc., 43 F.4th 150, 163 (1st Cir. 2022).

When analyzing whether a defendant's contacts within a state constitute purposeful availment, the Court must consider two important factors, namely, "the voluntariness of the contacts and the foreseeability of being haled into court based on those contacts."  Motus, LLC, 23 F.4th at 124 (citing Kuan Chen, 956 F.3d at 59). Voluntariness requires that the defendant's in-forum contacts be a direct result of its own actions, whereas foreseeability depends on the defendant's ability to "'reasonably anticipate being haled into court [].'"  Id.  (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174 (1985)).  Moreover, the purposeful availment prong acts as a species "rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject

the defendant to judgment regarding that behavior."  Carreras, 660 F.3d at 555 (citing J. McIntyre Mach., Ltd. v. Nicastro, 131 S.Ct. 2780, 2787-88 (2011)).

However, it does not allow for specific jurisdiction solely based on "'the unilateral activity of another party or a third person.'"  Rodríguez-Rivera, 43 F.4th at 164 (quoting Burger King Corp., 471 U.S. at 475).  See also Cossaboon v. Maine Medical Center, 600 F.3d 25, 32 (1st Cir. 2010) ("[A] defendant will not be subjected to personal jurisdiction on the basis of . . . 'the unilateral activity of another party or a third person.'" (citation omitted)); Plixer Int'l Inc. v. Scrutinizer GmbH, 905 F.3d 1, 9 (1st Cir. 2018) ("Specific personal jurisdiction must be based on a defendant's voluntary contact with the forum; it 'may not rest on the unilateral activity of another party or a third person.'" (citing Ticketmaster-New York, Inc., 26 F.3d at 208)); Kuan Chen, 956 F.3d at 59 ("[A] finding of purposeful availment necessarily requires more than the unilateral activities of third parties.").

In this case, the alleged tortious acts arise out of a contractual dispute being litigated in the Canadian courts.  Plaintiff has not proffered any evidence to suggest that Defendant has purposefully availed itself of this forum, other than the alleged damages that Plaintiff, as a resident of Puerto Rico, has suffered.  The First Circuit has previously rejected the use of the Calder "effects" test when "the in-forum effects of extra-forum activities" are the only connection to the forum state.  Mass. Sch. of Law at Andover, LLC., 142 F.3d at 36; see also Kowalski, 787 F.2d at 11; Sawtelle, 70 F.3d at 1392.

Furthermore, this district has held that personal jurisdiction will not attach to a defendant who places a product in the stream of commerce, but "does not own, control, or operate the websites that distributed the products in dispute."  Gazmey-Santiago v.

Suárez, Civil No. 17-1650 (ADC), 2018 WL 4719086, at *6 (D.P.R. Sept. 28, 2018). It follows, therefore, that personal jurisdiction cannot be exercised over Defendant based on a notice sent to a website he does not own, manage, or even maintain, especially when it was Plaintiff who placed The Wake in Vimeo.com's hands, so to speak. Id; see also PREP Tours, Inc., 913 F.3d at 20 ("[A] plaintiff's 'unilateral activity' cannot establish the requisite connection between the defendants and the forum jurisdiction." (citing Burger King Corp., 471 U.S. at 474-75).

Thus, a foreign corporation such as Defendant cannot be said to have reasonably anticipated being haled into this Court based solely on the alleged harm caused by two letters sent from Canada to two different states none of which are this forum, an unspecified communication to a production company also not within this forum, and a takedown notice sent to a website in not otherwise connected to Defendant. See Kuan Chen, 956 F.3d at 61-62 ("A defendant cannot be said to have purposefully availed itself of the benefits of a forum with respect to a given plaintiff when it has neither initiated any in-forum activity involving that plaintiff nor dealt with him knowing that he was located in the forum."). Consequently, Plaintiff's claim likewise fails the second prong of the jurisdictional analysis.

iii.   Reasonableness.

The third and final prong of the jurisdictional analysis is the reasonableness prong. For this prong, the Court looks to the so called "Gestalt factors" to ascertain whether exercising jurisdiction would be reasonable. Northern Laminate Sales, Inc., 403 F.3d at 26 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559 (1980)). These are:

(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; (5) and the common interests of all sovereigns in promoting substantive social policies.

Harlow, 432 F.3d at 67 (citing Pleasant St. I, 960 F.2d at 1088).

These factors, however, only come into play "where the minimum contacts question is very close." Nowak, 94 F.3d at 717. That is not the situation in this case. On the contrary, the Court need not discuss the reasonableness inquiry because of Plaintiff's failure to meet the first two prongs of the jurisdictional analysis. See A Corp., 812 F.3d at 61-62 (finding that the Gestalt factors did not need to be discussed because the plaintiff "failed to satisfy the first two prongs of the due process inquiry..."); Vapotherm, Inc. v. Santiago, 38 F.4th 252, 263 (1st Cir. 2022) (finding that the reasonableness analysis was not needed since the plaintiff failed to "make a prima facie showing as to either relatedness or purposeful availment."); Mercado v. Hyannis Air Servs., Inc., Civil No. 20-1228 (CVR), 2022 WL 16964118, at *8 (Nov. 15, 2022) (finding that "Plaintiff's claim as to reasonableness must necessarily fail" because it had failed to show that the first two prongs of the analysis were present.).

Considering all of these reasons, the Court finds it lacks specific jurisdiction over Defendant.

3. Federal Rule of Civil Procedure 4(k)(2).

In a last-ditch effort to save his case from dismissal, Plaintiff argues for the first time in his Sur-reply, that the Court has personal jurisdiction over Defendant, pursuant to Federal Rule of Civil Procedure 4. Plaintiff specifically cites to Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)") as the basis on which to ground this assertion.

The First Circuit has time and again made clear that a party waives any argument raised for the first time in a reply brief.  See North American Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 45 (1st Cir. 2001) ("There are few principles more securely settled in this court than the principle which holds that, absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief.").[7]  This First Circuit precedent has likewise been followed by other courts in this district.  See, e.g.: Murray v. Uber Tech., Inc., 486 F.Supp.3d 468, 473 (D.Mass. 2020) ("Arguments raised for the first time in a reply brief are generally deemed waived."); Att'ys Liab. Prot. Soc'y, Inc. v. Whittington Law Assocs., PLLC, 961 F.Supp.2d 367, 374 (D.N.H. 2013) ("This court ordinarily does not consider arguments made for the first time in reply, a practice that is even more sensible when a party's tardily-contrived arguments are in conflict with its own earlier arguments." (citations omitted).

The Court sees no reason to deviate from this standard, even more so when Plaintiff waited until his Sur-reply, which is his final filing, to present a theory that should have been argued early on.  Thus, the Court deems this argument waived.  Zannino, 895 F.2d at 17.

**B.  *Forum Non-Conveniens.***

In an abundance of caution and because the Court finds it likewise dispositive of this case, the Court will also address Defendant's *forum non conveniens* argument. Defendant avers that, even if the Court finds that personal jurisdiction is present, the case

---

[7] See also Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) ("As we have held in the past, an issue raised only in a reply brief is forfeited."); United States v. Rivera-Ruperto. 846 F.3d 417, 429 n. 9 (1st Cir. 2017) ("We need not address an argument raised for the first time in a party's reply brief."); Almodóvar v. McDonough, Civ. No. 21-1061, 2021 WL 5879205, at *2 (1st Cir. Dec. 13, 2021) ("Since the argument was only clearly articulated for the first time in his reply brief. . . it is waived." (citing Lapalme, 258 F.3d at 45; United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

should still be dismissed based on *forum non conveniens* grounds because Canada is the "adequate alternative forum." (Docket No. 16 at pp. 14). To support its argument, Defendant contends that this case arises from the same nucleus of operative facts as the case being litigated in Canada ("the Canadian case") "[b]ecause most of the facts relevant to Plaintiff's claims took place in Canada, with Canadian players, Canadian courts have jurisdiction over the parties and have relative ease of access to sources of proof and witnesses." Id. Defendant also posits that Canadian law may apply at least partially "because the contractual relationship between Plaintiff and [Defendant] was formalized in Canada, for services rendered [there]..." Id.

On the other hand, Plaintiff denies that this case is at all related to the Canadian case, nor does it "stem from the same set of facts." (Docket No. 20 at p.12). He asserts that the Canadian case "is strictly contractual, and merely related to an alleged failure to pay for production services," whereas the present case "is one of tortious acts committed by [Defendant], wrongful interference with Plaintiff's right to exploit his work and defamation." Id. at p. 8. The Court sides with Defendant.

The *forum non conveniens* doctrine allows the Court to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425, 127 S.Ct. 1184 (2007). Though considered "a discretionary tool," the *forum non conveniens* doctrine "is limited by the overarching principle that a 'plaintiff's choice of forum should rarely be disturbed.'" Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507-08, 67 S.Ct. 839 (1947)). Although the doctrine is a relatively flexible one, Howe v. Goldcorp Inv., Ltd, 946 F.2d 944, 947 (1st

Cir. 1991), a defendant that invokes it bears the heavy burden of showing why the plaintiff's chosen forum "'is so inconvenient that transfer is needed to avoid serious unfairness.'" Curtis v. Galakatos, 19 F.4th 41, 47 (1st Cir. 2021) (emphasis omitted) (quoting Nandjou v. Marriott Int'l, Inc., 985 F.3d 115, 141 (1st Cir. 2021); see also Medtronic Medical CR SRL v. Feliciano-Soto, 59 F.4th 51, 54 (1st Cir. 2023) ("Movants must overcome the presumption favoring the plaintiff's chosen forum." (citing Sinochem Int'l Co., 549 U.S at 430)).

In other words, the Court may grant dismissal on *forum non conveniens* grounds when the defendant has shown that jurisdiction is proper in an alternative forum, in cases where trial in the plaintiff's chosen forum would be either oppressive or vexatious to the defendant, or "'inappropriate because of considerations affecting the court's own administrative and legal problems.'" Mercier v. Sheraton Int'l, Inc. ("Mercier I"), 935 F.2d 419, 423 (1st Cir. 1991) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 102 S.Ct. 252 (1981)); see also Interface Partners Int'l, Ltd. v. Hananel, 575 F.3d 97, 101 (1st Cir. 2009) ("'[W]hen the plaintiff has chosen his home forum, he should not be deprived of it absent a clear showing of either oppressiveness and vexation or evidence that the chosen forum is inappropriate.'" (citing Adelson, 510 F.3d at 53).

Despite the "heightened deference" given to "plaintiff's choice of a home forum", however, "there is no automatic right to the presumption, and . . . the district court should deny the presumption to plaintiffs acting with a vexatious and oppressive motive." Interface Partners Int'l, Ltd., 575 F.3d at 102; see also Curtis, 19 F.4th at 47 ("Still, it is not as though the plaintiff's choice of forum is 'given dispositive weight' such that 'dismissal is automatically barred when a plaintiff has filed suit in her home forum.'").

Moreover, Supreme Court precedent dictates that federal courts may "dismiss damages actions" pursuant to the *forum non conveniens* doctrine, albeit only "in certain narrow circumstances", Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721, 116 S.Ct. 1712 (1996) (citing Gilbert, 330 U.S. at 501), such as where, as in the present case, "'the alternative forum is abroad.'" Id. at 722 (citing American Dredging Co. v. Miller, 510 U.S. 443, 449, n. 2, 114 S.Ct. 981 (1994); Piper Aircraft Co., 454 U.S. at 253-262).

Thus, the elements to consider when deciding whether a defendant has met its burden is twofold: first, it must demonstrate "'that an adequate alternative forum exists'" and second, the defendant must show "'that considerations of convenience and judicial efficiency strongly favor litigating the claims in the alternative forum.'"   Imamura v. General Electric Co., 957 F.3d 98, 106 (1st Cir. 2020) (citing Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).

1. Adequate Alternative Forum.

The existence of an adequate alternative forum depends on two factors, to wit: "'(1) [whether] all parties can come within that forum's jurisdiction, and (2) [whether] the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" Id. (quoting Mercier I, 935 F.32d at 424).  Regarding the first factor ("the forum's availability") "is usually met 'if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there.'" Id. (quoting Iragorri, 203 F.3d at 12).  The second factor ("the forum's adequacy") is met so long as the remedy provided by the forum "is [not] so clearly inadequate or

unsatisfactory that it is no remedy at all."  <u>Id</u>. (quoting <u>Mercier v. Sheraton Int'l, Inc.</u> <u>("Mercier II")</u>, 981 F.2d 1345, 1350 (1st Cir. 1992)).

As previously stated, Defendant avers that the Canadian forum is the adequate alternative forum for this case.  The Court agrees.  The first factor is met since Defendant, as a Canadian citizen, is obviously amenable to service of process in his home country. The second factor is also satisfied because Canada has its own laws that attend tort and copyright claims, and though admittedly different from the laws of the United States, those statutes should not be so dissimilar as to deprive Plaintiff of the proper remedies he seeks.  <u>See</u> <u>Howe</u>, 946 F.2d at 952 ("Controlling precedent makes clear. . . that small differences in standards and procedural differences (such as greater difficulty in meeting class action requirements or less generous rules for recovering attorney's fees) are beside the point." (citing <u>Piper Aircraft Co.</u>, 454 U.S. at 254, 252 n. 18)); <u>see also</u> <u>Mercier II</u>, 981 F.2d at 1352-53 ("The case law is clear that an alternative forum ordinarily is not considered 'inadequate' merely because its courts afford different or less discovery procedures than are available under American rules.").

The Court also points out that Plaintiff has already filed a counterclaim in the Canadian case.  (Docket No. 20-1 at pp. 24-39).  Therefore, a task as simple as amending that pleading to include the claims set forth in the present case would provide Plaintiff a way to find the remedies he seeks.

In view of the above, the Court finds that defendant meets the first part of the *forum non conveniens* analysis.

2.  <u>Private and Public Interest Balancing Test.</u>

The second part of the analysis — "that considerations of convenience and judicial

efficiency strongly favor litigating the claims in the alternative forum"[8] — necessarily requires a balancing of "public and private interest factors." Curtis, 19 F.4th at 48 (citing Nandjou, 985 F.3d at 142). A Court may not dismiss a case if, upon balancing the private and public interest factors, "the relative burdens of litigating the case in the plaintiff's home forum are in 'equipoise' or only marginally favor litigating it in the alternative forum." Nandjou, 985 F.3d at 141 (citation omitted).

The private interest factors to be considered include:

[T]he relative ease of access to sources of proof; availability and cost of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial or a case easy, expeditious, and inexpensive.

Imamura, 957 F.3d at 107 (citing Gilbert, 330 U.S. at 508).

These factors must then be weighed against the following public interest factors:

[T]he administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (citing Piper Aircraft Co., 454 U.S. at 241 n.6).

The lists of factors do not end here, but rather constitute a 'helpful starting point' for the second prong of the analysis. Curtis, 19 F.4th at 48 (citing Imamura, 957 F.3d at 107). Regardless, "'the ultimate inquiry is where the trial will best serve the convenience of the parties and the ends of justice.'" Imamura, 957 F.3d at 107 (citing Koster v. (Am.)

---

[8] Imamura, 957 F.3d at 106 (citing Iragorri, 203 F.3d at 12).

Lumbermens Mut. Cas.Co., 330 U.S. 518, 527, 67 S.Ct. 828 (1947)); see also Curtis, 19 F.4th at 48; Feliciano-Soto, 59 F.4th at 54.

Plaintiff in this case opposes the dismissal of his case on *forum non conveniens* grounds by stating, *inter alia*, that the facts surrounding this case are unrelated to the facts surrounding the Canadian case.  The Court disagrees.  In his opposition, Plaintiff asserts that the basis for these tortious acts case is Defendant's "wrongful claim [] of ownership" over The Wake.  (Docket No. 20 at p. 12).  Thus, according to Plaintiff, Defendant contacted the film festivals, the production company, and the Vimeo.com website, and requested they cease the showing of The Wake due to ownership issues.

The evidence presented by Plaintiff in support of his opposition, however, includes some of the pleadings presented in the Canadian case, including Defendant's Statement of Claim, the equivalent to a Complaint in our court system.  (Docket No. 20-1 at pp. 15-22).  That pleading states that the Canadian case currently being litigated, in which Plaintiff is a defendant, not only turns on contractual breach of contract but also includes claims relating to ancillary interests and intellectual property claims over The Wake.  Id. at pp. 17-18).  It is evident to the Court that ownership as to the intellectual property rights of The Wake is already an issue being litigated in the Canadian case.  According to Defendant, it was precisely this ongoing controversy which prompted Defendant to notify said film festivals, production company, and website about the copyright issue and request they cease any sort of publication or reproduction of The Wake.  (Docket No. 23 at p. 7).  Therefore, the instant case of tortious acts was born from the same nucleus of operative facts as what prompted the Canadian case.  Moreover, The Wake was filmed in Canada with Canadian actors and produced by a Canadian production company

(Defendant), the production contract was signed in Canada, and the disputes that caused the legal issues in both cases originated in Canada.  Thus, the balancing of the factors weighs strongly in favor of Canada as the proper forum for this case.  See Interface Partners Int'l Ltd., 575 F.3d at 104 ("Consistent with our caselaw, the fact that events relating to Hananel's (the defendant) alleged misconduct occurred in Israel (the alternative forum) weighs heavily in favor of the foreign forum." (citing Howe, 946 F.2d at 951; Piper Aircraft Co., 454 U.S. at 257-58).

The only possible legitimate reason that exists for entertaining this case in Puerto Rico is that Plaintiff is domiciled in the island.  However, none of the events that prompted this case happened in this forum or involved anyone in this forum.  Furthermore, the few potential witnesses that lie outside of Canada are not from Puerto Rico, but rather from other states of this nation.  Thus, factors of convenience and judicial efficiency weigh strongly in favor of litigating this case in Canada, where the originating facts and underlying circumstances occurred, where the majority of the witnesses lie, and where the evidence is more easily accessible.  See Imamura, 957 F.3d at 107; Curtis, 19 F.4th at 48; Feliciano-Soto, 59 F.4th at 5.

In sum, upon examining the record, the Court also finds in favor of dismissal of this case pursuant to the *forum non conveniens* doctrine.

## CONCLUSION

For the foregoing reasons, Defendant's "Motion to Set Aside and Dismiss" is GRANTED.  (Docket No. 16).  Accordingly, Plaintiff Luis Gerard González Cantón's claims against Defendant Mad Ruk Entertainment, Inc. are hereby DISMISSED WITH PREJUDICE.

González Cantón v. Mad Ruk Entertainment, Inc.
Opinion and Order
Civil 22-1458 (CVR)
Page 26

_____

IT IS SO ORDERED.

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, on this 13ᵗʰ day of July 2023.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE